Approved: _____
JOSHUA A. NAFTALIS / MATTHEW PODOLSKY
Assistant United States Attorneys

Before:    THE HONORABLE KEVIN N. FOX
           United States Magistrate Judge      21 MAG 10772
           Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :   **SEALED COMPLAINT**

   - v. -                         :   Violations of
                                      15 U.S.C. §§ 78j(b) and 78ff;
PUNEET DIKSHIT,                   :   17 C.F.R. § 240.10b-5; and
                                      18 U.S.C. §§ 1348 and 2.
          Defendant.         :
                                      COUNTY OF OFFENSES: NEW YORK

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        CHRISTOPHER YOUN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

### COUNT ONE
### (Securities Fraud)

        1.   From at least in or about July 2021 through at least in or about September 2021, in the Southern District of New York and elsewhere, PUNEET DIKSHIT, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, and the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances, in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making and causing to be made untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, to wit, DIKSHIT executed transactions in the securities of GreenSky, Inc. ("GreenSky") based on material, non-public information regarding the

forthcoming acquisition of GreenSky by a particular investment bank (the "Investment Bank"), which information DIKSHIT misappropriated through his employment at a particular management consulting firm (the "Consulting Firm") and in breach of his duties to the Consulting Firm and the Investment Bank.

(Title 15, United States Code, Sections 78j(b) and 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5;
and Title 18, United States Code, Section 2.)

## COUNT TWO
### (Securities Fraud)

2. From at least in or about July 2021 through at least in or about September 2021, in the Southern District of New York and elsewhere, PUNEET DIKSHIT, the defendant, willfully and knowingly, executed, or attempted to execute, a scheme and artifice to (a) defraud persons in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of securities of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that is required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, DIKSHIT executed a scheme to defraud by converting confidential business information regarding the Investment Bank's forthcoming acquisition of GreenSky to his own use for the purpose of executing transactions in GreenSky securities.

(Title 18, United States Code, Sections 1348 and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3. I have been a Special Agent with the FBI for approximately four years. I am currently assigned to a squad responsible for investigating violations of the federal securities laws and related offenses. I have participated in numerous investigations of these offenses, and I have made and participated in making arrests of individuals for participating in such offenses.

4. The information contained in this affidavit is based upon my personal knowledge, as well as information obtained

during this investigation, directly or indirectly, from other sources, including documents and information provided to me by others. The documents and information include, but are not limited to, (a) documents and other materials provided by GreenSky, the Consulting Firm that employed PUNEET DIKSHIT, the defendant, and the Investment Bank that had engaged the Consulting Firm, (b) publicly available documents, (c) trading records, and (d) witness interviews. Because this affidavit is prepared for the limited purpose of establishing probable cause, I have not set forth each and every fact I have learned in connection with this investigation. Where conversations and events are referred to herein, they are related in substance and in part. Where dates, figures, and calculations are set forth herein, they are approximate.

### Overview of the Insider Trading Scheme

5. As set forth below, there is probable cause to believe that PUNEET DIKSHIT, the defendant, misappropriated material, non-public information ("MNPI") through his employment at the Consulting Firm, and in violation of duties that he owed to the Consulting Firm and the Investment Bank, and used that information to make profitable securities trades. Between approximately in or about November 2019 and approximately in or about July 2020, and again between approximately in or about April 2021 and approximately in or about September 2021, the Investment Bank engaged the Consulting Firm to provide various consulting services related to its consideration of an acquisition of GreenSky and the post-acquisition integration of GreenSky. As one of the lead Consulting Firm partners responsible for these engagements, DIKSHIT learned, among other things, that the Investment Bank would be acquiring GreenSky. Based on that information, DIKSHIT purchased call options in GreenSky stock -- including shorted-dated, out-of-the-money calls -- in advance of the September 15, 2021 public announcement that the Investment Bank would be acquiring GreenSky and sold those calls after the deal was announced, realizing profits of approximately $450,000.

### Relevant Entities and Individuals

6. At all times relevant to this Complaint, the Consulting Firm was a global management consulting firm that maintained offices in various cities, including New York, New York. The Consulting Firm described itself generally as a trusted advisor to the world's leading businesses, governments, and institutions. In connection with its business, the Consulting Firm was regularly

3

in possession of MNPI, including information relating to its clients' contemplated and actual mergers and acquisitions.

7. At all times relevant to this Complaint, GreenSky was a publicly traded, financial technology ("fintech") company, headquartered in Atlanta, Georgia, that provided technology to banks and merchants to make point-of-sale, or so-called "buy-now-pay-later," loans to consumers for home improvement, solar, healthcare, and other purposes. GreenSky issued common stock that traded under the symbol "GSKY" on the Nasdaq Stock Market ("NASDAQ"), which is based in New York, New York. GreenSky's stock was registered under Section 12 of the Securities Exchange Act of 1934 and it was required to file reports under Section 15(d) of that Act.

8. At all times relevant to this Complaint, the Investment Bank described itself generally as a leading global financial institution that delivered a broad range of financial services across investment banking, securities, investment management, and consumer banking to a large and diversified client base that included corporations, financial institutions, governments, and individuals. The Investment Bank was headquartered in New York, New York and maintained offices in all major financial centers around the world. Between in or about November 2019 and the date of this Complaint, the Investment Bank engaged the Consulting Firm on various occasions in connection with the Investment Bank's consideration of a potential and actual acquisition of GreenSky, including to conduct due diligence and provide consulting services with respect to the anticipated post-acquisition integration.

9. At all times relevant to the Complaint, PUNEET DIKSHIT, the defendant, was a partner in the Consulting Firm's New York, New York office, where he led the Consulting Firm's unsecured lending practice in North America, and he advised lenders, acquirers, fintechs, and networks relating to payments and consumer finance. In that role, DIKSHIT was one of the lead Consulting Firm partners responsible for, among other things, providing consulting services to the Investment Bank in connection with its potential and actual acquisition of GreenSky, including conducting due diligence and providing advice regarding anticipated post-acquisition integration. As a result, DIKSHIT had access to MNPI about the Investment Bank-GreenSky transaction.

### Background on Call Options

10. Based on my training and experience, I have learned the following regarding call options, in substance and in part:

    a. A call option is a contract that gives the option buyer the right, but not the obligation, to buy a specific security (such as stock) at a specified price (the strike price) within a specific time period (before the option's expiration date). Purchasing a call option is consistent with a belief that the price of the underlying security will increase.

    b. A call option is "short dated" if its expiration date is close in time.

    c. A call option is "out of the money" if, at the time the option is purchased, the underlying security is trading below the strike price of the call option.

    d. Out-of-the-money call options are generally more cheaply priced than "in-the-money" call options. An out-of-the money call option generally has no value unless the value of the underlying security increases above the strike price before the option's expiration. For these reasons, buying short-dated, out-of-the money call options is generally considered an aggressive trading strategy.

### The Consulting Firm's Policies Relating to MNPI and Securities Trading

11. Based on my review of records obtained from the Consulting Firm, I have learned the following, in substance and in part:

    a. On or about May 29, 2012, as part of his employment with the Consulting Firm, PUNEET DIKSHIT, the defendant, signed a certification confirming that he had read the Consulting Firm's Personal Investments Policy and that he would comply with it. As relevant here, the Consulting Firm's Personal Investments Policy contained three basic requirements:

        i. First, the Personal Investments Policy made clear that "Firm members are prohibited from purchasing or selling any security while in possession of material non-public information ('MNPI') about the security or the issuer, including clients and non-clients. Such trades are also unlawful in most countries in which the Firm operates." The Personal Investments

5

Policy explained that "MNPI can relate to, but is not limited to, matters such as . . . potential M&A transactions."

      ii. Second, the Personal Investments Policy made clear that "Firm members and members of their households -- spouses, domestic partners, and dependents residing in their homes the majority of the year -- are prohibited from purchasing or selling publicly traded securities of any client of the Firm."

      iii. Third, the Personal Investments Policy made clear that "Firm members and members of their households are required to pre-clear all purchases and sales of publicly-traded securities." The Personal Investments Policy further provided that it "covers the purchase or sale of equity or debt securities, bonds, options, derivatives, or the exercise of options, through any account in which a Firm member or household member is a direct or indirect owner or over which a Firm member or household member may exercise control."

    b. On or about December 12, 2019, in connection with his election to partner in the Consulting Firm, DIKSHIT signed a letter setting forth the terms of that employment (the "Letter"). The Letter contained various provisions regarding securities trading and the use of confidential information, including the following:

      i. First, the Letter made clear that, as a partner, DIKSHIT was expected to "comply with all Firm Policies," including the "Personal Investments Policy, which among other things, prohibits Firm members and members of their household from purchasing or selling securities of client of the Firm."

      ii. Second, the Letter made clear that "[the Consulting Firm's] clients expect that [the Consulting Firm] will hold all business-related information about the client . . . in the strictest confidence ('Client Confidences'); that, as Partner in the Consulting Firm, DIKSHIT had a "duty to preserve Client Confidences"; and that DIKSHIT "agree[d] not to use Client Confidences . . . , except as may be necessary in the good faith performance of your duties to [the Consulting Firm]."

    c. As of on or about June 1, 2018, the Investment Bank entered into an Amended and Restated Master Consulting Agreement with the Consulting Firm (the "Master Consulting Agreement"). The Master Consulting Agreement provided, among other things: "[The Consulting Firm] shall not use [the Investment Bank's] Confidential Information for any purpose other than to

provide the Services for the benefit of [the Investment Bank] under this Agreement. [The Consulting Firm] shall hold the Confidential Information in strict confidence. . . . [The Consulting Firm] shall use at least the same degree of care in handling the Confidential Information as it uses with regard to its own proprietary information of a similar nature, but in no event less than a reasonable standard of care."

### The Defendant's and His Wife's Brokerage Accounts

12. Based on my review of records obtained from a particular financial services company that provides commission-free trading to its customers (the "Brokerage Firm"), I have learned the following, in substance and in part:

    a. In or about January 2019, the Brokerage Firm approved an application to open a securities trading account in the name of "Puneet Dikshit" (the "DIKSHIT Account"). In the account opening forms provided to the Brokerage Firm, "Puneet Dikshit" indicated, among other things, that his employer was the Consulting Firm and that his home mailing address was a particular apartment in New York, New York (the "Apartment"). Certain Consulting Firm records for PUNEET DIKSHIT, the defendant, also reflected that DIKSHIT's home mailing address was the Apartment. Accordingly, I believe that DIKSHIT is the owner of the DIKSHIT Account.

    b. In or about December 2020, the Brokerage Firm approved an application to open a securities trading account (the "Wife Account") in the name of a specific person ("Individual 1"). The account opening forms provided to the Brokerage Firm provided certain information, including, among other things, her home address and date of birth. The home address provided to the Brokerage Firm was the Apartment, the same home address that DIKSHIT provided to the Brokerage Firm. Accordingly, and based on my review of publicly available information and a law enforcement database, I believe that Individual 1 is DIKSHIT's wife and that DIKSHIT's wife is the owner of the Wife Account.

### The Defendant's Insider Trading Scheme

13. As noted above and set forth below, there is probable cause to believe that PUNEET DIKSHIT, the defendant, misappropriated MNPI through his employment at the Consulting Firm, and in violation of duties that he owed to the Consulting Firm and the Investment Bank, and used that information to trade GSKY call options. DIKSHIT engaged in this trading between on or

about July 26, 2021 and on or about September 15, 2021 -- at the same time he was leading a Consulting Firm team that was advising the Investment Bank about its potential acquisition of GreenSky. At various time between on or about July 26, 2021 and on or about September 13, 2021, DIKSHIT purchased and sold relatively small numbers of GSKY call options, which had expiration dates weeks or months from the time of purchase. However, in the two days before the September 15, 2021 public announcement that the Investment Bank would be acquiring GreenSky, DIKSHIT sold all of these longer-dated GSKY call options and purchased approximately 2500 out-of-the money GSKY call options that were due to expire just a few days later, on September 17, 2021. After the deal was announced, DIKSHIT sold these calls and realized profits of approximately $450,000.

### The Defendant Advises the Investment Bank on Its Consideration of an Acquisition of GreenSky in 2019 and 2020

14. Based on my review of records maintained by the Consulting Firm, the Investment Bank, and GreenSky, public news reports, and filings with the Securities and Exchange Commission ("SEC"), I have learned the following, in substance and in part:

    a. On or about August 6, 2019, GreenSky publicly announced that it had "commenced a process to explore, review and evaluate a range of potential strategic alternatives focused on maximizing stockholder value."

    b. Beginning on or about September 23, 2019, the Investment Bank and GreenSky had various discussions regarding a potential acquisition of GreenSky by the Investment Bank.

    c. As part of its consideration of a potential acquisition of Greensky, the Investment Bank engaged the Consulting Firm to perform due diligence on GreenSky, in or about November 2019, December 2020, and early July 2020. PUNEET DIKSHIT, the defendant, was one of the lead Consulting Firm partners involved in this engagement.

    d. The Investment Bank's discussions with GreenSky, which included a written offer to acquire GreenSky, due diligence, and the exchange of a draft merger agreement, ceased in or about early March 2020.

    e. On or about August 10, 2020, GreenSky publicly announced that it had brought its strategic alternative process to a close, and that it had determined not to sell itself.

8

### While Again Advising the Investment Bank on Its Consideration of an Acquisition of GreenSky in 2021, DIKSHIT Engages in Insider Trading

15. Based on my review of records maintained by the Brokerage Firm, the Consulting Firm, the Investment Bank, and GreenSky, phone records, public news reports, SEC filings, publicly available stock price and internet protocol ("IP") information, and my interview of an Investment Bank employee, I have learned the following, in substance and in part:

a. On or about April 27, 2021, the Investment Bank re-engaged the Consulting Firm to provide consulting services for the Investment Bank's point-of-sale lending business, which included an analysis of the implications of a potential transaction with GreenSky. PUNEET DIKSHIT, the defendant, was again one of the Consulting Firm partners who led this engagement. Thereafter and through at least on or about September 15, 2021, DIKSHIT had regular communications with representatives of the Investment Bank about its potential acquisition of GreenSky, and ultimately the Consulting Firm was also engaged to advise the Investment Bank regarding the anticipated post-acquisition integration of GreenSky -- an engagement that DIKSHIT also led.

b. On or about May 29, 2021, the Chief Executive Officer of the Investment Bank advised the Chief Executive Officer of GreenSky that the Investment Bank was interested in restarting discussions regarding a potential acquisition of GreenSky. Thereafter and through at least on or about September 15, 2021, representatives of the Investment Bank and GreenSky had in regular communications about a potential transaction.

c. On or about July 15, 2021, the Investment Bank made a written offer to acquire GreenSky in an all-stock transaction at the equivalent of $9.00 per share based on the previous day's closing price for the Investment Bank. This offer represented a premium to GSKY's closing price on or about July 15, 2021 of $5.54 per share.

d. On or about July 26, 2021, DIKSHIT purchased 15 GSKY call options that had a strike price of $7.50 and an expiration date of September 17, 2021 ("GSKY 9/17/21 $7.50 Calls") in the DIKSHIT Account. On or about July 26, 2021, GSKY stock closed at $5.80 per share.

e. On or about August 3, 2021, a Consulting Firm employee executed an engagement letter -- drafts of which had been

exchanged between Investment Bank and Consulting Firm employees, including DIKSHIT, since in or about June 2021 -- that related to the Consulting Firm's then on-going provision of consulting services to the Investment Bank's point-of-sale lending business (the "Engagement Letter") and emailed the Engagement Letter to various Investment Bank and Consulting Firm employees, including DIKSHIT. The Investment Bank executed the Engagement Letter on or about August 6, 2021. The Engagement Letter provided that it was being entered into pursuant to the Master Consulting Agreement and listed DIKSHIT as one of the Consulting Firm partners leading the engagement.

    f. The day after the Consulting Firm emailed the Engagement Letter to the Investment Bank, on or about August 4, 2021, DIKSHIT sold all 15 GSKY 9/17/21 $7.50 Calls that he had purchased approximately one week earlier for a profit of approximately $720.

    g. Two days later, on or about August 6, 2021, DIKSHIT purchased 160 GSKY call options that had a strike price of $10 and an expiration date of December 17, 2021 ("GSKY 12/17/21 $10 Calls") in the DIKSHIT Account. GSKY stock closed at $8.09 per share that day, on or about August 6, 2021.

    h. On or about August 12, 2021, a Consulting Firm employee sent an email to Investment Bank and Consulting Firm employees, including DIKSHIT, that stated, in part, "Hi Team -- was great to see all of you this afternoon. Following our discussion, please find a 1-pager highlighting the market context and strategic rationale surrounding the Glacier acquisition." I have learned that Glacier was the code name for GreenSky.

    i. On or about August 20, 2021, DIKSHIT sent an email to other Consulting Firm employees with the subject line "Quick update on [the Investment Bank]." In the email, DIKSHIT wrote that he and an Investment Bank employee ("Investment Bank Employee 1") had "chatted multiple times this week as [he/she] had several questions on [the Investment Bank] as they dug deeper into that asset [GreenSky] and held in-person meetings. Seems the management team has shared a lot more data with them. They will be flying back to Atlanta again soon for another round of discussions and analyses. . . . [T]hey think there is potentially another buyer so want to move fast." On or about August 22, 2021, a Consulting Firm employee responded, "Thanks puneet for the update. Does seem like this is progressing once again. Glad you and [another Consulting Firm employee] are staying close to [Investment Bank Employee 1] on this."

10

j. On or about August 23, 2021, DIKSHIT purchased 3 GSKY call options that had a strike price of $7.50 and an expiration date of December 17, 2021 ("GSKY 12/17/21 $7.50 Calls") in the DIKSHIT Account. GSKY stock closed at $7.73 per share that day, on or about August 23, 2021.

k. On or about September 2, 2021, DIKSHIT purchased 15 GSKY call options that had a strike price of $7.50 and an expiration date of January 21, 2022 ("GSKY 1/21/22 $7.50 Calls") in the DIKSHIT Account. GSKY stock closed at $7.95 per share that day, on or about September 2, 2021.

l. On or about September 9, 2021, GreenSky informed the Investment Bank that it was prepared to move forward with the Investment Bank's most recent proposal to acquire GreenSky, which had been made the day before, on or about September 8, 2021. Pursuant to that proposal, the Investment Bank offered to acquire GreenSky in an all-stock transaction at the equivalent of $12.15 per share based on the Investment Bank's closing price on or about September 8, 2021. This offer represented an approximately 45 percent premium to GSKY's closing price of $8.39 per share on the day of the proposal, on or about September 8, 2021.

m. That same day, on or about September 9, 2021 at approximately 4:46 p.m. EST, DIKSHIT sent an email to an Investment Bank employee ("Investment Bank Employee 2") in which he wrote, "Had spoken [sic] to [Investment Bank Employee 1] about joining the [GreenSky] calls" -- referring to due diligence calls with vendors that GreenSky was now permitting the Investment Bank to make.

n. Also that same day, on or about September 9, 2021 at approximately 9:54 p.m. EST, a Consulting Firm employee sent an email to, among others, DIKSHIT, with the subject line "Glacier" -- the code name for GreenSky -- that read: "They [the Investment Bank] have unofficially heard that they have won the deal. Likely signing on Monday[, September 12, 2021]." At approximately 10:40 p.m. EST that same day, on or about September 9, 2021, DIKSHIT replied, "This is great news!"

o. The next day, on or about September 10, 2021, DIKSHIT purchased (i) 7 GSKY 12/17/21 $7.50 Calls, and (ii) 3 GSKY call options that had a strike price of $10.00 and an expiration date of October 15, 2021 ("GSKY 10/15/21 $10 Calls") in the DIKSHIT Account. GSKY stock closed at $8.34 per share that day, on or about September 10, 2021.

11

p. On or about September 13, 2021 at approximately 3:03 p.m. EST, a Consulting Firm employee sent an email (the "Engagement Email") to Investment Bank Employee 2, copying DIKSHIT, among others, to confirm the Investment Bank's engagement of the Consulting Firm, including DIKSHIT, to provide post-closing integration work related to the Investment Bank's acquisition of Greensky. The subject line of the email stated: "Confirmation of Glacier Support." The body of the email stated, in part: "To kickoff our formal support (e.g., team staffing, etc.) we need a note (response to this email is fine) that we are confirmed to support on Glacier -- through the streams outlined in our discussion today." At approximately 5:01 p.m. EST that same day, on or about September 13, 2021, Investment Bank Employee 2 wrote back, "Confirmed."

q. A few minutes after the Engagement Email, at approximately 3:14 p.m. EST, DIKSHIT sent a text message to Investment Bank Employee 2 asking whether he/she had "a min to chat." DIKSHIT and Investment Bank Employee 2 then exchanged text messages and scheduled a call for the following morning, on or about September 14, 2021.

r. A few minutes later, between approximately 3:21 p.m. EST and 3:41 p.m. EST on or about September 13, 2021, DIKSHIT purchased and sold various GSKY call options in the DIKSHIT Account. Specifically:

i. DIKSHIT sold (i) all 3 GSKY 10/15/21 $10 Calls, and (ii) all 10 GSKY 12/17/21 $7.50 Calls for a total profit of approximately $635.

ii. DIKSHIT also purchased 212 GSKY call options that had a strike price of $10.00 and an expiration date of September 17, 2021 ("GSKY 9/17/21 $10 Calls") -- i.e., four days later -- for approximately $0.10 per contract. GSKY's stock closed at $8.85 that day, on or about September 13, 2021.

s. Also that same day, on or about September 13, 2021 between approximately 7:46 p.m. EST and 7:51 p.m. EST, the Wife Account engaged in various transactions. Specifically, approximately $10,000 was transferred into the Wife Account, and an order to purchase 150 GSKY 9/17/21 $10 Calls for approximately $0.10 per contract was placed. The next day, on or about September 14, 2021, between approximately 9:30 a.m. EST and 9:34 a.m. EST, the order to purchase these calls was executed when the market opened.

t. On or about September 14, 2021, beginning at approximately 9:52 a.m. EST, DIKSHIT had a phone call with Investment Bank Employee 2 that lasted for approximately ten minutes -- the call that been scheduled by text message the prior day, on or about September 13, 2021.

u. Approximately two minutes after his phone call with Investment Bank Employee 2, DIKSHIT began to engage in various transactions in the DIKSHIT Account, between approximately 10:04 a.m. EST and 11:36 a.m. EST. on or about September 14, 2021. Specifically:

i. DIKSHIT sold all 15 GSKY 1/21/22 $7.50 Calls and all 160 GSKY 12/17/21 $10 Calls -- all of his remaining longer-dated options -- for a total profit of approximately $2,931.

ii. DIKSHIT also transferred approximately $10,000 into the DIKSHIT Account.

iii. DIKSHIT then used these proceeds to purchase an additional 2269 GSKY 9/17/21 $10 Calls -- scheduled to expire three days later -- for between $0.05 and $0.13 per contract. GSKY's stock closed at $7.77 that day, on or about September 14, 2021.

v. Later that day, on or about September 14, 2021, DIKSHIT used his Consulting Firm computer (the "Computer"), including as follow:

i. At approximately 3:24 p.m. EST, DIKSHIT ran the following Google search: "what happens to options when company is acquired."

ii. Approximately four minutes later, at approximately 3:38 p.m. EST, DIKSHIT used the Computer to run another Google search: "greensky market cap."

iii. Shortly thereafter, at approximately 4:15 p.m. EST, DIKSHIT accessed the Brokerage Firm website and viewed a webpage relating to GSKY $10 call options.

w. The next day, on or about September 15, 2021 at approximately 8:00 a.m. EST, before the stock market opened, the Investment Bank and GreenSky publicly announced that they had entered into an agreement pursuant to which the Investment Bank would acquire GreenSky in an all-stock transaction valued at approximately $2.24 billion. By the close of the market that day,

GreenSky's stock price had risen to $11.90 per share, an approximately 53 percent increase from the previous trading day's close of $7.77 per share.

x. Right as the stock market opened that same day, between approximately 9:34 a.m. EST and 9:35 a.m. EST on or about September 15, 2021, DIKSHIT sold all 2481 GSKY 9/17/21 $10 Calls in the DIKSHIT Account for between approximately $1.80 and $1.85 per contract, resulting in profits of approximately $425,981.

y. Shortly thereafter at approximately 9:58 a.m. EST on or about September 15, 2021, all 150 GSKY 9/17/21 $10 Calls in the Wife Account were sold for approximately $1.75 per contract, resulting in profits of approximately $24,750.

z. DIKSHIT's trading activity in the DIKSHIT Account discussed above was primarily from two specific IP addresses ("IP Address 1" and "IP Address 2"). IP Address 1 was associated with the Consulting Firm. The trading activity in the Wife Account on or about September 15, 2021 was also primarily through two IP addresses: IP Address 2 and another specific IP address associated with the Consulting Firm ("IP Address 3"). Accordingly, I believe that DIKSHIT engaged in the trading activity in the Wife Account discussed above.

aa. Prior to the trading activity discussed above, neither the DIKSHIT Account nor the Wife Account had previously traded in any GSKY securities.

bb. DIKSHIT did not seek to pre-clear with the Consulting Firm any of the securities transactions described above, as required by the Consulting Firm's Personal Investments Policy. However, on or about September 30, 2021, after there had been public reporting regarding suspicious trading in GSKY call options shortly before the September 15, 2021 announcement of GreenSky's acquisition, DIKSHIT logged into the Consulting Firm's pre-clearance system and sought permission to trade in GreenSky securities, which was denied.

cc. On or about October 7, 2021, DIKSHIT used the Computer to run Google searches related to the conviction of "Rajat Gupta." Based on my review of publicly available documents, as well as my training and experience, I know that Rajat Gupta, a former global corporate chairman of the Consulting Firm, was convicted of insider trading offenses in the Southern District of New York in or about 2012.

14

WHEREFORE, I respectfully request that a warrant be issued for the arrest of PUNEET DIKSHIT, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

s/Christopher Youn by KNF, USMJ
CHRISTOPHER YOUN
Special Agent
Federal Bureau of Investigation

Sworn to me via reliable
electronic means, telephone,
this 9th day of November, 2021

*Kevin Nathaniel Fox*
THE HONORABLE KEVIN N. FOX
United States Magistrate Judge
Southern District of New York